GRIER et al. v. UNITED STATES.
Civ. A. No. 3844.

United States District Court
D. Connecticut.
March 1, 1954.

John H. Weir (of Thompson, Weir & MacDonald), New Haven, Conn., for plaintiff.

Edward J. Lonergan, Asst. U. S. Atty., Hartford, Conn., H. Brian Holland, Asst. Atty. Gen., and Andrew D. Sharpe, David A. Wilson, Jr., Sp. Assts. to Atty. Gen., for defendant.

SMITH, District Judge.

This case was fully submitted without oral testimony, on a stipulation of facts and a supplement thereto and written briefs. The stipulation and supplement are adopted as the findings of fact by the Court.

The action was commenced pursuant to Title 28, Sec. 1346 by plaintiff Isabel H. Grier and her husband, Edgar B. Grier, since deceased and now represented by the trust company, as administrator, for the refund of deficiencies in income tax in the amount of $1,173.95 for the year 1947, and $427.24 for the year 1948, together with interest thereon, which they allege were erroneously and illegally assessed against them. In the alternative and by way of a second count, plaintiffs claim that if the Court agrees with the commissioner's determination that the loss incurred by plaintiffs in 1946 was an ordinary loss and that, as a result, the above set-out deficiencies were correctly assessed, then they are entitled either to an adjustment pursuant to 26 U.S.C.A. § 3801, or to some equitable remedy which would allow setting off the deficiencies of 1947 and 1948 against the overpayment in 1946.

In 1932 Edgar B. Grier, then a resident of New Haven, Connecticut, inherited a one-family house located in Elizabeth, New Jersey, from his mother. At the time of her death, the real estate had been rented to the same tenant for some years, who thereafter continued to occupy the house and pay rent to Edgar Grier until the house was sold in 1946. Prior to the tenant's occupancy, Edgar Grier's mother had lived in the house. Edgar Grier was a securities adviser and salesman by occupation, and aside from the sale of this piece of property in 1946, the only real estate sales he was ever involved in were the sale of his own home in New Haven and his own farm in 1938 and the purchase at the same time of a residence in Hamden, Connecticut. From 1932 to 1946, Grier provided, either by himself or through an agent, whatever services in the nature of upkeep and repair were deemed necessary for the maintenance of the New Jersey house such as the installation of a furnace in 1938 on which he took depreciation. These repairs were usually accomplished by Grier's approval of estimates mailed to him by the tenants and the subsequent payment of the bills by him.

The sale of the New Jersey property in 1946 resulted in a loss to Grier, the amount of which it has been stipulated was $9,994.76 but which he claimed at the time to be $16,004.34. Grier in filling out his 1946 income tax return attributed the loss to the sale of a capital asset, added one-half the amount of the loss to another long term capital loss of $129.26 and offset against the total thereof a net long term capital gain of $36.28, resulting in a total net long term capital loss of $8,095.15, of which he deducted $1,000.

Grier paid the tax liability incurred on this basis of $2,259.03 on or before March 15, 1947. He continued carrying over the capital loss, applying it against capital gains, and in his income tax return for 1947 again deducted $1,000 paying a tax liability of $3,551.11. The same procedure was followed for the 1948 joint return of Edgar and Isabel Grier, and a tax liability of $3,165.18 was paid for that year.

In an examination of the income tax return of Edgar Grier for the year 1947 and the Griers' joint return for 1948, the Commissioner of Internal Revenue determined that the loss resulting from the sale of the real estate in 1946 was an ordinary loss and that the Griers were not entitled to a capital loss carryover in the years 1947 and 1948. He assessed additional income taxes against

them for 1947 and 1948 which they paid, and on November 23, 1951, they filed claims for refund for these years which were rejected by the Commissioner in a letter dated April 17, 1952.

The case presents two rather difficult issues. The first question before us is whether the Commissioner was correct in his determination that the sale of the real estate in 1946 occasioned an ordinary loss rather than a long term capital loss. If the Commissioner's ruling is correct, it will be necessary to determine whether the plaintiff is entitled to an adjustment under the provisions of 26 U.S.C.A. § 3801 or some equitable recoupment remedy.

The question of whether the sale of real estate gives rise to ordinary gain or loss to the non-realtor seller or capital gain or loss is one which has not been answered consistently by prior decisions. The relevant provisions are 26 U.S.C.A. §§ 117(a) (1) (B) and 23(*l*). In the former, capital assets are defined as "property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*), * * * or real property used in his trade or business * * *". Section 23(*l*) on depreciation provides for a "reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business, or (2) of property held for the production of income."

Giving meaning to each clause of the above sections, it would seem that on the face of 117 to be excluded from the definition of capital assets, a piece of property must be used in the trade or business of the taxpayer, and that since under the second clause of 23(*l*) we have a separate provision for property held for the production of income, property so held would not fall under the exclusionary clause of 117. It is this distinction that provides the core of the problem here, the plaintiff arguing that ownership of the house in New Jersey

constituted at most a holding for the production of income since Mr. Grier was in no way connected with the real estate business while the defendant counters with allegedly parallel situations held to be sales of property used in the trade or business of the taxpayer.

The courts have established various criteria of "used in the trade or business" such as the continuity of sales and sales related activity over a period of time, frequency of sales as opposed to isolated transactions, the active management of the property, or even the attempt to rent the property. In Hazard v. C. I. R., 1946, 7 T.C. 372, petitioner, an attorney at law, owned and occupied as a residence, property in Missouri which he left taking up residence in Pittsburgh. The Missouri property was rented and depreciation allowed thereon from January 1, 1940 until its sale in 1943.

It was held that such property was not a capital asset within the purview of Sec. 117, and Hazard was allowed an ordinary loss deduction. The court felt that the 1942 amendments to the act did not change the traditional holding of courts that residential improvements on real estate converted into income producing property are property "used in the trade or business of the taxpayer" regardless of whether or not he engaged in any other trade or business; citing Fackler v. C. I. R., 6 Cir., 1943, 133 F. 2d 509. This latter case, however, using the Flint v. Stone Tracy Co. definition of a trade or business—" 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit' ", Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L. Ed. 389,—dealt with a lessee who sublet stores in a leased building, and the court, considering the problem to be one of degree, felt that the active management required in alterations and repairs commensurate with the number of tenants, the employment of labor, etc., resulted in fulfilling the definition of trade or business. As plaintiff contends, it is not four-square precedent for Hazard.

A contrary result was reached by the Tax Court in Emery v. C. I. R., 1951, 17 T.C. 308, where it was held that in a similar fact situation the sale of a parcel of rented water front unimproved property was not the sale of property used in the trade or business of the taxpayer, but gave rise to a capital loss. Mertens feels the two cases are irreconcilable except for a possible unrealistic distinction between improved an unimproved realty. See Mertens, Law of Federal Income Taxation (1953 Cum. Pocket Supp.) n. 17, sec. 22.23.

Other tax court decisions have been based on the effort of the taxpayer to rent the property. In Good v. C. I. R., 1951, 16 T.C. 906, where the taxpayer bought property to subdivide and sell, but instead only rented it for some years before selling it in one piece, the court held essentially that consistent attempts to rent made the property subject to inclusion in taxpayer's trade or business.

The second circuit has also reached varied results depending on the fact situation. In Pinchot v. C. I. R., 2 Cir., 1940, 113 F.2d 718, taxpayer's situation with the management of 11 buildings was held in the trade or business since the court, using the Flint v. Stone Tracy Co. definition of the term, felt that she necessarily had to make continuous transactions for repair, upkeep and employment of labor, even if through her agent. This was held to be more than "the investment and reinvestment of funds in real estate".

The government relies heavily on Gilford v. C. I. R., 2 Cir., 1953, 201 F.2d 735, since the court held the sale there to constitute an ordinary loss where taxpayer, not in the realty business, acquired under the terms of a will a fractional interest in a building containing stores and apartments. She, with the co-owners, placed the property in the hands of real estate agents who managed it and accounted for the income. The court was impressed with the "necessarily regular and continuous activity" involved in such a large management proposition involving the taxpayer. It stressed the constant need to get new rentals, the supplying of services, and the keeping in good repair, citing Fackler and Pinchot, supra. The three cases are hardly applicable to the situation before us. Even though they concern people not otherwise involved in the real estate business, in a "one-transaction" situation, and in one case an inheritance situation, it is the extent of the regular and continuous activity of management involved in such multiple rental situations that impressed the court. That element is not present here.

In Harriss v. C. I. R., 2 Cir., 1944, 143 F.2d 279, where the taxpayer acquired an interest in 21 pieces of realty in different parts of the country between 1910 and 1936, the court held that a farm purchased by him and other members of the family and held for 13 years was a capital asset.

In this case the activities with relation to this single dwelling, although of long duration, were minimal in nature. Activity to rent and re-rent was not required. No employees were regularly engaged for maintenance or repair.

Lacking the broader activity stressed in Rogers v. U. S., D.C.Conn.1946, 69 F.Supp. 8, and Pinchot v. C. I. R., Gilford v. C. I. R. and Fackler v. C. I. R., supra, the real estate in this case appears to partake more of the nature of property held for investment than property used in a trade or business. The property in this case, although used for the production of income should not be considered as used in the taxpayer's trade or business.

Plaintiffs are entitled to judgment for the refunds and interest. Form of judgment may be submitted on notice.