**WORKMEN'S MUTUAL FIRE INSURANCE SOCIETY, INC., Plaintiff-Appellee,**

v.

**Harold B. A'HEARN, United States District Director of Internal Revenue, Defendant-Appellant.**

**No. 172, Docket 25825.**

United States Court of Appeals Second Circuit.

Argued Jan. 16, 1961.

Decided Feb. 6, 1961.

James McKinley Rose, Jr., Asst. U. S. Atty., So. District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., So. District of New York, New York City, on the brief), for defendant-appellant.

Seymour M. Waldman, Waldman & Waldman, New York City (Louis Waldman, New York City, of counsel), for plaintiff-appellee.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

SMITH, Circuit Judge.

The taxpayer is a mutual fire insurance company incorporated under the laws of New York and doing business on a nationwide scale. During the 1920's Workmen's had quite a substantial portion of its funds invested in first mortgages on real estate. During the depression, after repeated defaults and as a last resort to protect its prior investments, the taxpayer foreclosed, or accepted deeds in lieu of foreclosure, on some seventeen parcels of improved real property. New York law forbade this type of insurer from owning and administering real property as a business venture and placed a five year limitation on the holding of foreclosed property. Because of the extremely depressed conditions and virtually nonexistent real estate market, however, taxpayer received permission from the New York State Insurance Department to hold the properties pending a market recovery.

All of the properties were held until the mid-1940's. During that time, Workmen's administered these holdings through a professional real estate agent; vacancies were filled, rents were collected, extensive and minor repairs and renovations were made when necessary or desirable. The sale of six of these parcels in 1945, at a loss of $19,355.73, is the basis of the present dispute. The taxpayer treated the transactions as resulting in losses from the sale of capital assets; it attempted to take advantage of the five year capital loss carry forward provisions by setting them off, in its 1950 tax return, against a capital gain of $11,856.92 in that year. Int.Rev.Code of 1939, § 117(e) (1), 26 U.S.C.A. § 117(e). The Commissioner viewed the 1945 transactions as sales of non-capital assets, disallowed the loss carry forward, and assessed a deficiency of $3,590.60 for 1950. Workmen's paid the deficiency and brought suit to recover that payment in the District Court for the Southern District of New York.

The case was tried below, without a jury, before Judge Dimock. He found that these parcels of improved realty were not "used in the taxpayer's trade or business," but rather were properties "held for the production of income." He held, consequently, that the 1945 sales were of capital assets and that taxpayer was entitled to capital loss carry forward treatment.

Congress has defined the term "capital assets" as encompassing *all* property which does not fall within certain broad exclusions. The relevant portions of § 117(a) of the 1939 Code, governing this case, provide:

"(1) The term 'capital assets' means property held by the tax-

payer (whether or not connected with his trade or business), but does not include—

\* \* \* \* \* \*

"(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*), or real property used in his trade or business;"

As the properties in question are clearly "subject to the allowance for depreciation" or "real property," the crucial question is whether they were used in the taxpayer's trade or business. The opinion of the Fifth Circuit in A. L. Carter Co. v. Commissioner, 5 Cir., 1944, 143 F.2d 296, 298, is a useful guide here. The disputed issue in that case was the cost basis for the sale of property acquired by foreclosure. The basis hinged on whether or not depreciation was allowable on the property, which in turn depended on whether the property was "used in the taxpayer's trade or business." Taxpayer was a lumber and construction products dealer. He also rather extensively financed construction projects; this, of course, was of considerable aid in increasing his volume of sales. The court took a broad view of the taxpayer's "business" and found the financing aspect an integral part of his overall operation. It concluded that the actual physical properties after foreclosure similarly were held in his trade or business, as directly derivative from his financing business.

The principal "trade or business" of the plaintiff is the insuring of real and personal property against fire hazards. However, an integral part of the "business" of an insurer is the investment of premium funds not immediately needed for indemnity payments or for legally required cash reserves. Unlike the Carter case, there is no showing here that the investments had any close effect on the volume of the underwriting business of the plaintiff; nonetheless, this investment program, fully as much as the income from any actuarial margin of profit, is the means by which an insurance com-

pany becomes a profit making business organism. The realities of the situation demand a conclusion that Workmen's investment program was part of its "trade or business."

It may still be argued that, although it is Workmen's business to invest, the management of real property is wholly foreign to an insurer's business. This might well be true if the taxpayer's investment portfolio had consisted solely of stocks and bonds. When Workmen's invested heavily in real estate mortgages, however, it must have fully realized the future possibilities of default and necessary foreclosure. "The management and administration of foreclosed property is an essential ingredient of the business of financing." A. L. Carter Co. v. Commissioner, supra, at page 297. The fact that under state law the taxpayer was not permitted to enter the business of real estate management is not important here. When the depression-spawned necessity arose, the Insurance Commissioner waived the statutory ban and gave Workmen's permission, in effect, temporarily to enter that business. The presence of a state regulatory statute, not truly reflective of the tax realities, should not serve to thwart the uniform application of Federal taxing laws. Martin v. United States, D.C.E.D.Ill.1954, 128 F.Supp. 576, 580, affirmed 7 Cir., 1956, 230 F.2d 106.

The court below relied upon, and the taxpayer strongly urges upon us, the case of Grier v. Commissioner, D.C.D.Conn. 1954, 120 F.Supp. 395, affirmed on opinion below, 2 Cir., 1955, 218 F.2d 603. The District Director, on the other hand, points to the earlier case in this circuit of Gilford v. Commissioner, 2 Cir., 1953, 201 F.2d 735, and to Fackler v. Commissioner, 6 Cir., 1943, 133 F.2d 509 and Pinchot v. Commissioner, 2 Cir., 1940, 113 F.2d 718. In all of these cases except Pinchot, however, the court was dealing with individual taxpayers involved in some form of single transaction, and Pinchot arose under a different statute. In none of them (Grier, Gilford or Fackler) was there a showing of an organized and continued course of business

similar to the mortgage investment program of Workmen's. This court need not, therefore, reach the question of a possible inconsistency between Grier and Gilford, nor do we here reexamine the respective merits of those cases.

The judgment of the district court is reversed, and the cause is remanded with instructions to enter judgment in favor of defendant-appellant.