**UNION NATIONAL BANK OF TROY and Frank V. Sutland, as Executors of the Last Will and Testament of Louis H. Gross, Deceased, Plaintiffs**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 7731.**

United States District Court
N. D. New York.

June 29, 1961.

Smith, Pattison, Sampson & Jones, Troy, N. Y., for plaintiffs; Lambert L. Ginsberg, Troy, N. Y., of counsel.

Justin J. Mahoney, U. S. Atty., Syracuse, N. Y., Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner, Jerome Fink, R. Michael Duncan, Attys., Dept. of Justice, Washington, D. C., of counsel, for defendant.

JAMES T. FOLEY, District Judge.

This suit is for the refund of federal income taxes. Alternative relief is requested by the plaintiffs, i. e., the refund of $7,019.66, plus statutory interest for taxes paid by the decedent for the calendar year 1954, or, if such claim is not upheld, the refund of $19,384.77 with interest for the calendar year 1953. Unlike many of these actions, the facts are uncomplicated, as well as—in my judgment

—the law to be interpreted and applied. The case was tried to the Court. All the witnesses were called by the plaintiff, and nothing was developed by the government that would place the essential facts for decision in the realm of dispute.

Louis H. Gross, the decedent, sold his one-third undivided interest in 316 River Street, Troy, N. Y., in 1953 at a loss of $24,731.25. This loss he reported as a capital loss in his 1953 tax return, and in accordance with law, assuming capital loss to be proper, he limited his deductions on the 1953 return to $1,000 and the remainder he carried over and deducted on his 1954 return as "net capital loss". His 1954 return was not audited by the Internal Revenue Agents until after the expiration of the Statute of Limitations for refund and assessment of deficiencies or possible adjustment of the 1953 return. It was then determined by the Commissioner that the 316 River Street property sold in 1953 was "property, used in his trade or business" within the exception to the definition of "capital assets" contained in Section 117(a) (1) (B), 26 U.S.C.A. § 117 (1952 Ed.). The official conclusion was that the loss resulting from the sale of the property was to be treated as an ordinary loss instead of a capital loss as taken by the taxpayer. The capital loss carryover to 1954 was determined as improper, such was disallowed and the resulting deficiency for 1954 was assessed and collected, creating the prime claim in this suit for $7,019.66 plus interest. As to the alternative relief sought, if ordinary loss treatment should be upheld as correct, the government by the formal interposition of the Statute of Limitations in its Answer rigidly maintains that the conceded substantial money loss resulting from the sale of the property could not, by reason of such bar, be accredited as an ordinary loss to the adjustment of or correction of the return filed for 1953 in that respect and the tax paid thereon.

My decision will not necessitate the resolution of this dilemma created for the taxpayer by the government in the delay of its audit. I should like to think

that even if the position of the government in this respect has unqualified legal support, administrative judgment would allow the correction of a mistake and refund, where a taxpayer was lulled into complacency by the unexplained delay of the government agents in computation that places in the coffers of the government money which in fairness belongs to a taxpayer. The tax collector from the beginning of time never was popular and never will be. But sharpness and hostile attitudes in tax matters develop when the government takes technical advantage and becomes a transgressor itself to a policy of open, honest and voluntary disclosure so necessary to the collection of tax revenues. Of course, time limitations are essential to repose and finality in our massive tax program, but the street for correction of honest mistake should be two-way. Fair judgment without fear or favor should be exercised, particularly when mistake is induced by inactivity of the government, and no citizen would complain. The philosophy of Lincoln in his First Annual Message is not outmoded. It stressed a sacred concept of democracy that it is as much the duty of government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals. Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 580, 66 S.Ct. 745, 90 L.Ed. 862.

To return to the question at hand, there is settled law in the Second Circuit which sets a clear, definite standard to be applied to the facts. It must be followed by this District Court. 1 Moore Federal Practice (2nd Ed.) pgs. 4059–4063; Abbott v. United States, D.C., 61 F.Supp. 989. The leading authority for this circuit is the writing of Judge Smith, now a member of the Court of Appeals, Second Circuit, in Grier v. Commissioner, D.C.Conn., 120 F.Supp. 395; affirmed on opinion below, 218 F.2d 603. The tests therein relate to a search for continuous, regular and substantial activity in relation to the management

of the property that would give logical basis to a conclusion that it was one used in a trade or business that would exclude it from characterization as a capital asset. Judge Smith pointed out (120 F.Supp. at page 398) that the previous ruling in the Second Circuit, Gilford v. C. I. R., 2 Cir., 201 F.2d 735, also established this measure of regular and continuous activity in management as important and impressive. In Workmen's Mutual Fire Insurance Soc. Inc. v. A'Hearn, 2 Cir., 286 F.2d 718, 721, possible inconsistency of Grier and Gilford was not reached but organized and continuous course of business is still emphasized. See also Bauer v. United States, D.C., 168 F.Supp. 539, 541. In my judgment, the slight contact of the decedent with the property involved here, 316 River Street, was obviously of minimal nature and fits the reasoning of both Grier and Gilford even if there be inconsistency in those two rulings which to me is not apparent.

The record discloses that Louis Gross, the deceased taxpayer, was the distinguished Bank President of the Union National Bank in that city since 1939. It was there he gave his full energy and talent every business day from that time until his death. His one-third interest in 316 River Street came to him under his father's will upon the termination of a trust for his mother, May 29, 1946. This property was a substantial one in the business section of Troy. Like two others he similarly acquired by inheritance, it was subject to net lease of the entire property to chain stores. The lease on 316 River Street was dated March 15, 1930 and executed by his father for twenty years, to expire April 30, 1952, the lessee being F. W. Woolworth Company. The lease was a net lease, and there was no obligation at all on Gross and his family to maintain or repair. Taxes, water rents, ordinary assessments, were all the obligations of the lessee. It is undisputed in the record that Gross did not to any extent, directly, or indirectly through agents, have anything at all to do with

the management and operation of the property. His passive contact was to receive his share of the rents as paid. The extension of the lease was arranged by his cousin through a broker, and I am content to find that the taxpayer played no active part in the arrangement of such extension. A most significant factor in the record is that the income of Gross for all rented properties in 1953 was $7,887.49; in 1954 $3,594.06, as compared to his declared net income for those years of $80,213.92 and $81,264.06. It would crush reason to conclude in view of these facts that the rental of property was his trade or business. The government concedes in its brief that the taxpayer was not heavily involved in real estate in Troy outside of the inherited properties. Further, it is also stated therein that it is not trying to contend Gross was a real estate dealer, although in my judgment there is nothing magnanimous in such statement because it would be impossible to prove or infer otherwise.

It is clear without question to me that the activity of the taxpayer in reference to 316 River Street was as inconsequential as human conduct and interest can be. The conclusion to me is inevitable that 316 River Street, if words and language are to be accorded plain meaning, was a capital asset held for the production of income and not in any sense used in the trade or business of the taxpayer. My findings of fact are contained herein, and my conclusion of law is that the sale in 1953 of the taxpayer's interest in 316 River Street resulted in a capital loss, and was properly taken in 1953 with carryover of balance to 1954. The deficiency assessment was erroneous for the year 1954, and the plaintiff is entitled to the judgment it seeks for such amount. The alternative claim as to the year 1953 is dismissed as moot.

A judgment to such effect shall be consented to and agreed upon; otherwise proposed judgment to be settled on three days' notice.