EDWIN R. CURPHEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10546–78.     Filed February 4, 1980.

---

[10]The record indicates that on June 26, 1978, the two trustees were two of the three members of the board of directors.

Edwin R. Curphey, pro se.
*Jerome Borison*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $189 in petitioner's Federal income tax for the year 1976. Concessions having been made, the issues remaining for decision are whether petitioner is entitled to a deduction in connection with an office in his home under section 280A[1] and a deduction for automobile expenses incurred in travel between his home and certain rental properties which he owned and managed.

## FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts and the attached exhibit are incorporated herein by this reference.

Petitioner was a resident of Honolulu, Hawaii, at the time he filed the petition herein. He filed an individual income tax return for the taxable year 1976.

Petitioner is a dermatologist employed by Kaiser Permanente Hospital of Hawaii and was so employed during the taxable year in issue. Petitioner worked 40 hours a week at Kaiser Permanente Hospital and devoted additional hours to reading medical journals and attending medical seminars and conferences. Petitioner received gross wages of $45,782.50 from his hospital employment in 1976.

During the taxable year 1976, petitioner owned six rental units which he held for the production of income. These properties were listed in his income tax return as follows:

> Villa on Eaton Square (condominium);
> Mooring (townhouse);
> Pearl One (condominium);
> Harbour Square (condominium);
> Village Green (townhouse);
> Crestview (single family dwelling).

[1] All statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year involved herein.

Petitioner managed his rental properties entirely by himself. Some of the units were rented furnished.

Petitioner lived in a two-bedroom condominium in 1976. He used one bedroom exclusively as an office for bookkeeping and other activities related to management of his rental properties. That room was furnished with a desk, a bookcase, a filing cabinet, calculators, and a "code-a-phone answering service." There was no television, sofa, or bed in that room, and petitioner did not allow guests to stay there. The closet of that room was used only to store items related to the rental properties such as lamps, carpets, and other furnishings, signs, which petitioner used to advertise the units for rent, cleaning materials, which he needed to prepare a rental unit for a new tenant, and a tool box.

Petitioner, who was 52 years old during the taxable year in question, intended the rental properties to provide a source of income when he retired from his medical practice at age 65. In 1976, petitioner received gross rental income of $24,760 from the six units, but had a net loss of $23,043 and a negative cash flow of $6,242. Petitioner expected that each unit would ultimately produce a positive cash flow of approximately $100 to $200 per month.

Petitioner incurred depreciation and paid other expenses in 1976 of $549 in connection with the use of his second bedroom as an office.

Petitioner used his automobile in driving between his home and the rental units and paid expenses of $147 for such automobile use.[2]

OPINION

The issues for decision are (1) whether petitioner is entitled to a deduction under section 280A of the Internal Revenue Code for expenses incurred for the use of a room in his residence as an office in connection with his ownership and management of rental properties, and (2) whether petitioner is entitled to a deduction for automobile expenses incurred in driving between his residence and those rental properties.

---

[2]The parties have stipulated that petitioner claimed a deduction of $147 for automobile use, and we have accepted this amount as the expenses paid by petitioner, although petitioner's tax return shows a claimed deduction of $153.

Section 280A was added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520,[3] to provide "definitive rules * * * governing the deductibility of expenses attributable to the maintenance of an office in the taxpayer's personal residence." S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 185; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 852. Section 280A provides in pertinent part:

SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNEC-TION WITH BUSINESS USE OF HOME, RENTAL OR VACA-TION HOMES, ETC.

(a) GENERAL RULE.—Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

\*      \*      \*      \*      \*      \*      \*

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.—

(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) as the taxpayer's principal place of business,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

Respondent has conceded that a portion of petitioner's residence, which was a dwelling unit as that term is used in section 280A,[4] was used exclusively and on a regular basis in connection with petitioner's rental activities and that the amount of the deduction claimed by the petitioner was allocable to the portion of his dwelling unit which was so used. Respondent contends,

---

[3]Sec. 280A was made effective for taxable years beginning after Dec. 31, 1975.
[4]See sec. 280A(f)(1), which provides:

(f) DEFINITIONS AND SPECIAL RULES.—

(1) DWELLING UNIT DEFINED.—For purposes of this section—

(A) IN GENERAL.—The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit.

however, that petitioner is not entitled to a deduction under section 280A for business use of his home because his rental activities did not constitute a business for purposes of that section or, in the alternative, if such activities did constitute a business, then petitioner's principal place of business was Kaiser Permanente Hospital, where he was employed as a dermatologist, and not his home office from which he conducted his rental business.[5]

We turn first to the issue of whether petitioner's rental activities constituted a business for purposes of section 280A. It is respondent's position that the word "business" was used in section 280A to distinguish activities which qualify as a "trade or business" under section 162 from the holding of property for production of income within the meaning of section 212(1) and (2) and that petitioner was merely holding his rental properties for the production of income and was not engaged in the trade or business of renting property.

We agree with respondent's argument to the extent that it rests upon the proposition that no deduction under section 280A is allowable for use of a home in connection with an activity which is merely for the production of income within the meaning of section 212 but is not a "trade or business" under section 162. This position is amply supported by the legislative history of section 280A. The Senate Finance Committee report states:

*An allocable portion of expenses paid or incurred with respect to the use of a dwelling unit which is used by the taxpayer both as a residence and in connection with income producing activities (sec. 212) will not be allowable as deductions under the provisions of this section unless the income producing activity constitutes a trade or business.* For example, no deduction will be allowed if a taxpayer *who is not in the trade or business of making investments,* uses a portion of his residence (exclusively and on a regular basis) to read financial periodicals and reports, clip bond coupons and performs similar activities because the activity is not a trade or business. [S. Rept. 94–938, *supra,* 1976–3 C.B. (Vol. 3) at 187. Emphasis added.]

See also H. Rept. 94–658, *supra,* 1976–3 C.B. (Vol. 2) at 853.

We think it significant that this report specifically qualified its refusal to allow the deduction of home office expenses for income-producing activities by carving out the exception "unless the income producing activity constitutes a trade or business"

---

[5]Petitioner does not contend that subpar. (B) or (C) of sec. 280A(c)(1) is applicable.

and indicating that the disallowance of a deduction was intended to apply to a taxpayer "who is not in the trade or business of making investments," thereby implying that under appropriate circumstances, such type of activity could constitute a trade or business.[6]

Respondent points out that the committee reports relating to section 280A(c)(1) discuss critically the case of *Anderson v. Commissioner*, T.C. Memo. 1974-49, in which—

the taxpayer was allowed a portion of the expenses attributable to a family room which was partially used to conduct investment activities which consisted of keeping records with respect to rental properties, preparing the taxpayer's income tax returns, and writing letters to brokers and taxing authorities. [S. Rept. 94-938, *supra*, 1976-3 C.B. (Vol. 3) at 183; H. Rept. 94-658, *supra*, 1976-3 C.B. (Vol. 2) at 850.]

We note, however, that in that case, the room considered to be a home office was not used exclusively for that purpose, and petitioner did not assert that she was in the trade or business of managing property. Consequently, we do not find the discussion of the *Anderson* case particularly illuminating.

When the Tax Reform Act of 1976 was considered by the Senate, a floor amendment offered by Senator Bartlett was adopted which incorporated the language of section 212(2) into the definition of business use of a home by providing that "business use of homes includes in its meaning for the use of management, conservation, or maintenance of property held for the production of income, and which is the substantial business of the taxpayer." 122 Cong. Rec. S13,742 (daily ed. Aug. 6, 1976). This amendment was rejected, however, by the Conference Committee and was not part of section 280A as enacted into law. S. Rept. 94-1236 (Conf.) (1976), 1976-3 C.B. (Vol. 3) 807, 839; H. Rept. 94-1515 (Conf.) (1976).[7]

The Conference Committee did not articulate its reasons for such rejection. Senator Bartlett was concerned with retired

---

[6]While the House Ways and Means Committee Report does not contain the "unless * * * " clause of the Senate Finance Committee Report, it does contain the language limiting the disallowance of a deduction to a taxpayer "who is not in the trade or business of making investments." See H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 853.

[7]In offering his amendment, Senator Bartlett remarked—

"My mendment [sic] is quite simple and, according to the joint committee, was discussed and agreed as the intention of the term 'Business Use of Home.' This amendment simply adds the code language of section 212(2), thereby specifically clarifying what is intended to be included as business conducted in a taxpayer's residence." (122 Cong. Rec. S13,742 (daily ed. Aug. 6, 1976).)

persons whose only activity was the management of their investments from their home and viewed his amendment as merely a clarification. See 122 Cong. Rec., *supra*. Senator Long (the chairman of the Senate Finance Committee) expressed his view of the amendment as a "very limited expansion of what the committee did in this area" and stated that it conformed with "what the committee intended to do to begin with." See 122 Cong. Rec., *supra*. From the foregoing, it can be inferred that the Conference Committee viewed the amendment simply as surplusage, because the committee reports already made clear that a section 212(2) activity is within the scope of section 280A so long as it constitutes a "substantial business," or, alternatively, as an undesirable "expansion" which would permit investors in securities automatically to be considered to be in a trade or business and entitled to deduct home office expenses. In either case, the rejection of Senator Bartlett's amendment is consistent with the language of the Senate report that expenses "in connection with income producing activities (sec. 212) will not be allowable as deductions * * * unless the income producing activity constitutes a trade or business." S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 187.

We do not read the legislative history as supporting the conclusion that Congress intended to modify the long-established judicial treatment of the ownership of rental properties as constituting a trade or business within the meaning of section 162. See pp. 774–775 *infra*. Our view in this respect is reinforced by those portions of the legislative history of section 280A which recognize that certain income-producing activities (including the making of investments) may rise to the level of a "trade or business." We therefore do not agree with that portion of respondent's argument that, *as a matter of law*, petitioner's ownership and management of his rental properties did not constitute a trade or business for the purposes of section 280A.

Turning to the judicial history, we first address ourselves to respondent's suggestion on brief that the enactment of section 212 absorbed section 162 as it relates to the ownership and management of rental real estate. Section 212, which came into existence at the time the 1954 Code was enacted, did no more (insofar as the issue before us is concerned) than reenact section 23(a)(2) of the Internal Revenue Code of 1939. See H. Rept. 1337, to accompany H.R. 8300, 83d Cong., 2d Sess. 29, A59 (1954); S.

Rept. 1622, to accompany H.R. 8300, 83d Cong., 2d Sess. 34, 218 (1954). The scope of the 1939 Code sections was explained as follows in *United States v. Gilmore*, 372 U.S. 39, 45 (1963):

As noted in *McDonald* v. *Commissioner*, 323 U.S. 57, 62, the purpose of the 1942 amendment was *merely to enlarge* "the category of incomes with reference to which expenses were deductible." And committee reports make clear that deductions under the new section were subject to the same limitations and restrictions that are applicable to those allowable under § 23(a)(1). Further, this Court has said that § 23(a)(2) "is comparable and *in pari materia* with § 23(a)(1)," providing for a class of deductions "*coextensive with the business deductions allowed by § 23(a)(1)*, except for" the requirement that the income-producing activity qualify as a trade or business. *Trust of Bingham* v. *Commissioner*, 325 U.S. 365, 373, 374. [Emphasis, aside from the phrase "in pari materia," added; fn. ref. omitted.]

We think that this articulation of the interplay between sections 23(a)(1) (the predecessor of sec. 162 of the 1954 Code) and 23(a)(2) of the Internal Revenue Code of 1939 (the predecessor of sec. 212 of the 1954 Code) is a clear indication that respondent's absorption theory is unwarranted. The legislative history of section 23(a)(2) of the 1939 Code reflects an expansive, rather than absorptive, quality. See H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 372, 410, 429–430; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 570–571. Moreover, in *Noble v. Commissioner*, 7 T.C. 960 (1946), acq. 1946–2 C.B. 4, this Court specifically recognized that, in respect of rental real estate, expenses were deductible under section 23(a)(1) of the 1939 Code even though, if that section had been found not to be applicable, they would have been deductible under section 23(a)(2) of that Code. (See 7 T.C. at 964.)[8] Given the foregoing, we think respondent's argument that we should accept his absorption theory, because expenses relating to rental real estate are dealt with in his regulations under section 212 (see sec. 1.212–1(b) and (h), Income Tax Regs.), reflects a bootstrap

---

[8]In the cases cited by respondent as allowing deductions in respect of rental property under sec. 212, the issue of deductibility appears to have been raised only in the context of that section and the opinions made no reference to sec. 162. *Hartford v. United States*, 265 F. Supp. 86 (W.D. Wis. 1967); *Coors v. Commissioner*, 60 T.C. 368, 409–410 (1973), affd. on other issues 519 F.2d 1280 (10th Cir. 1975); *Markward v. Commissioner*, T.C. Memo. 1978–312. In *Clancy v. Commissioner*, T.C. Memo. 1978–85, the issue of sec. 162 was involved, but the Court found that, on the facts, that section did not apply. We note that respondent's attempt to rely on the fact that sec. 212 had made it unnecessary for the courts squarely to face the "trade or business" issue where ownership and management of rental properties is involved may have come about, at least in part, by his own acquiescences in the *Elek*, *Hazard*, and *Noble* cases. See pp. 774 *infra* and 773 *supra*.

quality and, as such, is entitled to little, if any, weight in our analysis.

Similarly, we find unpersuasive respondent's attempt, based upon *Higgins v. Commissioner*, 312 U.S. 212 (1941), to equate an investor in real estate with an investor in stocks and bonds. In that case, the Supreme Court held that it was not erroneous as a matter of law for the Board of Tax Appeals to find that the taxpayer, who "merely kept records and collected interest and dividends from his securities, through managerial attention for his investments" (312 U.S. at 218), was not engaged in carrying on a trade or business. Indeed, in relying on *Higgins*, respondent fails to acknowledge that the decision therein was limited to the issue of whether the taxpayer's management of his securities investments was a business, since the Commissioner conceded that the management of the taxpayer's real property for production of income did constitute a business. The distinction between ownership and management of real property and of securities is significant in determining what constitutes a "trade or business." See *Rogers v. United States*, 69 F. Supp. 8, 12 (D. Conn. 1946).

This Court has held repeatedly in cases subsequent to the Supreme Court decision in *Higgins* that the rental of even a single piece of real property for production of income constitutes a trade or business. *Fegan v. Commissioner*, 71 T.C. 791, 814 (1979), on appeal (10th Cir., July 30, 1979); *Elek v. Commissioner*, 30 T.C. 731 (1958), acq. 1958–2 C.B. 5; *Lagreide v. Commissioner*, 23 T.C. 508 (1954); *Noble v. Commissioner, supra; Hazard v. Commissioner*, 7 T.C. 372 (1946), acq. 1946–2 C.B. 3.

Perhaps the full reach of these cases would not extend to every situation involving the application of section 280A to rental property. Just as we have refused to conclude that petitioner's ownership and management of his rental properties does not *as a matter of law* constitute a trade or business, for purposes of section 280A, so we are not prepared to conclude that, in every case, the ownership and management of such properties would, *as a matter of law*, constitute a trade or business for such purposes. Cf. *Grier v. United States*, 120 F. Supp. 395 (D. Conn. 1954), affd. per curiam 218 F.2d 603 (2d Cir.

1955).[9] In the final analysis, the issue is ultimately one of fact in which the scope of the ownership and management activities may be an important consideration. In the instant case, petitioner's activities included personal efforts to manage the six units in seeking new tenants, in supplying furnishings, and in cleaning and otherwise preparing the units for new tenants. These activities were sufficiently systematic and continuous to place him in the business of real estate rental. See *Alvary v. United States*, 302 F.2d 790 (2d Cir. 1962), and cases cited therein; *Fackler v. Commissioner*, 133 F.2d 509 (6th Cir. 1943), affg. 45 B.T.A. 708 (1941); *Bauer v. United States*, 144 Ct. Cl. 308, 168 F. Supp. 539 (1958). Compare *Grier v. United States, supra.*[10]

Statements to the effect that the rental of real estate may constitute a trade or business are by no means confined, as respondent would have us believe, to dicta in cases involving whether capital or ordinary *gain* must be recognized; where a loss is involved, the "trade or business" issue is critical. See, e.g., *Gilford v. Commissioner*, 201 F.2d 735 (2d Cir. 1953), affg. a Memorandum Opinion of this Court (ordinary loss recognized on sale of property used in rental business); see also *Pinchot v. Commissioner*, 113 F.2d 718 (2d Cir. 1940) (nonresident alien was engaged in a business, management of rental properties, within the United States); *Fegan v. Commissioner, supra* (allowance of investment credit); *Schwarcz v. Commissioner*, 24 T.C. 733 (1955) (war losses attributable to operation of rental business could be carried forward); *Lagreide v. Commissioner, supra* (net operating loss carryover); *Jamison v. Commissioner*, 8 T.C. 173 (1947) (ordinary loss allowed because property used in rental business); *Noble v. Commissioner, supra.*

Respondent maintains that even if petitioner was engaged in the trade or business of renting real property, his principal place of business for purposes of section 280A(c)(1)(A) was Kaiser Permanente Hospital, where he practiced dermatology, and not the home office, from which he managed his rental properties. Respondent does not deny that a taxpayer may have two trades or businesses or be engaged in a profession and a business. See *Achong v. Commissioner*, 246 F.2d 445, 447 (9th Cir. 1957), affg. a Memorandum Opinion of this Court; *Sherman v. Commissioner*,

---

[9]See also *Clancy v. Commissioner*, T.C. Memo. 1978–85.

[10]See generally J. Saunders, " 'Trade or Business,' Its Meaning Under the Internal Revenue Code," 12 U. So. Cal. Sch. of L. Tax Inst. 693 (1960).

16 T.C. 332, 337 (1951). In such situations, the expenses properly attributable to each business are deductible. *Fackler v. Commissioner*, 133 F.2d at 511–512. Respondent argues, nevertheless, that, where a taxpayer is engaged in more than one business, a deduction is allowable under section 280A(c)(1)(A) only if, when all his businesses are considered together, his home office is his principal place of business as determined by evaluating the time spent, the degree of business activity, and the financial return from the activity at each business post.[11]

Respondent's suggested criteria for determining the taxpayer's principal place of business are drawn from cases involving the issue of whether a taxpayer was "away from home" for purposes of section 162(a). E.g., *Frank v. United States*, 577 F.2d 93 (9th Cir. 1978); *Montgomery v. Commissioner*, 532 F.2d 1088 (6th Cir. 1976), affg. 64 T.C. 175 (1975). See also *Coombs v. Commissioner*, 608 F.2d 1269 (9th Cir. 1979), affg., revg., and remanding 67 T.C. 426 (1976). "Principal place of business," as used in those cases, refers to a general area or vicinity in which a taxpayer's "tax home" is located, and a taxpayer cannot have more than one "tax home." "Principal place of business," as that term is employed in section 280A(c)(1)(A), refers to the home as a specific situs in which a business is carried on. We find no indication either in the statute or the legislative history that a taxpayer cannot have more than one principal place of business, for purposes of section 280A(c)(1), if he engages in more than one trade or business.

We think that section 280A(c)(1)(A) requires a determination as to whether, with respect to a particular business conducted by a taxpayer, the home office was his principal place for conducting that business. Such a determination will fulfill the legislative objective of preventing deductions for the use of a home for purposes which are primarily personal. See S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185; H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 852. The requirement that the secondary activity be a "trade or business" and not just a "section 212" income-producing activity, along with the other conditions imposed by

---

[11]Respondent concedes that, if we determine (as we have) that petitioner was engaged in a trade or business in respect of his rental properties, "his activities with regard to that business are conducted in the home office," i.e., that petitioner's home office was his principal place of business with respect to his rental activities. In this connection, we note that, in some situations, there may be a substantial question whether the taxpayer's home or his rental properties constitute his principal place of business.

section 280A(c), is a sufficient safeguard against such abuse. Respondent's approach of requiring that the home office be *the principal place* at which the taxpayer's *principal* business is conducted would disallow otherwise allowable deductions in connection with the use of a home office which is *a principal place* of business. We do not believe that Congress intended such a result.[12]

Accordingly, keeping in mind respondent's concession (see n. 11 *supra*), we hold that petitioner is entitled to a deduction for expenses incurred in connection with the use of a portion of his residence as an office.

The next issue for decision is whether automobile expenses paid by petitioner for travel between his residence and his rental properties were ordinary and necessary expenses incurred in carrying on a trade or business or were commuting expenses and, therefore, personal and nondeductible. Sec. 162(a); sec. 262.[13]

It is well established that expenses incurred by a taxpayer in commuting between his home and his place of business are personal and nondeductible. *Commissioner v. Flowers*, 326 U.S. 465, 473–474 (1946); *Heuer v. Commissioner*, 32 T.C. 947, 951–952 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). Expenses incurred on trips between two places of business, however, may be deductible. *Steinhort v. Commissioner*, 335 F.2d 496, 503–504 (5th Cir. 1964), affg. and remanding a Memorandum Opinion of this Court; *Heuer v. Commissioner, supra* at 953.[14]

Petitioner made his trips from his home office (which we have held to be the principal place of business with respect to his rental activities) to his rental properties for a business purpose, i.e., to carry out management duties at those properties. We see no reason why the rule that local transportation expenses incurred in travel between one business location and another are deductible should not be equally applicable *where the taxpayer's*

---

[12]Subpars. (B) and (C) of sec. 280A(c)(1), which provide conditions under which a deduction is allowable for use of a home office which is not a principal place of business, do not appear to us to be directed to the situation of a taxpayer who has more than one business, and we, therefore, draw no inference from those subsections in resolving the issue at hand.

[13]For some reason not readily apparent, respondent concedes that if petitioner's rental activities were merely for the production of income and not a "trade or business," the expenses at issue would be deductible under sec. 212.

[14]We note that petitioner has not argued in support of his position that any of his transportation expenses were incurred in travel between Kaiser Permanente Hospital and his rental properties.

*principal place of business with respect to the activities involved is his residence. Hulme v. United States,* an unreported case (N.D. Cal. 1965, 16 AFTR 2d 5084, 1965–2 USTC par. 9499).[15] The fact that, under such circumstances, a taxpayer has no commuting expenses because his office is in his home, should not render nondeductible transportation costs which are otherwise ordinary and necessary expenses incurred in pursuit of his business. Respondent's reliance on *Smith v. Warren,* 388 F.2d 671 (9th Cir. 1968), *Green v. Commissioner,* 59 T.C. 456 (1972), and *Mazzotta v. Commissioner,* 57 T.C. 427 (1971), affd. per curiam 465 F.2d 1399 (2d Cir. 1972),[16] is misplaced; they are distinguishable from the instant case because in each of those cases the taxpayer, who maintained an office in his residence which was not his major place of employment, traveled from his principal place of business to his residence for a primarily personal reason—to be at home each evening. Thus, expenses incurred in travel between the place of employment and the home were held to be personal and nondeductible. In contrast, the petitioner herein was motivated by purely business reasons to travel locally between his principal place of business to another business location in carrying on his rental activities. We think that in such a situation the trips should not be equated with commuting. Accordingly, we hold that petitioner's automobile expenses incurred in traveling from his residence to his rental properties are deductible under section 162. *Steinhort v. Commissioner, supra* at 503–504; *Heuer v. Commissioner, supra* at 953.

*Decision will be entered under Rule 155.*

---

[15]Accord, *St. John v. Commissioner,* T.C. Memo. 1970–238.

[16]*Fryer v. Commissioner,* T.C. Memo. 1974–77, is distinguishable from the present case, not only because the residence was not a primary place of business, but also because the taxpayer was seeking to deduct his transportation expenses as travel expenses incurred while "away from home" under sec. 162(a)(2).