VICTORIA BALSAMO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Balsamo v. Commissioner
Docket No. 16491-84.
United States Tax Court
T.C. Memo 1987-477; 1987 Tax Ct. Memo LEXIS 473; 54 T.C.M. (CCH) 608; T.C.M. (RIA) 87477; September 21, 1987. Louis Morowitz, for the petitioner. Robert L. Schneps, Catherine R. Chastanet, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined *474 a deficiency of $ 8,041.35 and an addition to the tax in the amount of $ 402.07 pursuant to section 6653(a)(1)[1] for the taxable year ending December 31, 1980. After concessions, the issues for our decision are: 1) the proper basis for computing the amount of gain or loss sustained on the sale of property acquired from a decedent's estate; 2) whether the gain or loss sustained was capital or ordinary and; 3) whether petitioner is subject to an addition to tax for negligence under section 6653(a)(1). [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated by this reference. Victoria Blasamo ("petitioner") was a resident of Brooklyn, New York at the time of filing her petition. The subject matter *475 and the primary focus of the issues in this case is a single family residence ("premises") located in Syosset, New York, purchased by petitioner's late husband, Louis Balsamo ("Balsamo") on or about August 27, 1965. Petitioner married Balsamo on August 1, 1976. It was his second marriage. Petitioner and Balsamo entered into a pre-nuptial agreement on July 8, 1976, pursuant to which petitioner waived all claims to and rights in any/all real and personal property acquired by Balsamo prior to July 31, 1976, and all rights with respect to the election to take against any share of the estate of Angela Balsamo, Balsamo's ex-wife. On January 27, 1977, five months after his marriage to petitioner, Balsamo died. In June of 1977, petitioner commenced litigation regarding the validity of the pre-nuptial agreement. Prior to the challenge by petitioner, but after the death of Balsamo, the premises was rented by Balsamo's estate to Andrew Economopoulos ("Economopoulos"), pursuant to a month-to-month oral agreement at $ 500 per month. Before then, the property had been used by Balsamo as his residence following his divorce. When he remarried, it was used by Balsamo and petitioner as a week-end *476 retreat. Balsamo never rented the premises during his life time. On May 9, 1979, petitioner's action against the estate was settled by stipulation. Petitioner received the following in satisfaction of her right of election: 1. The premises, subject to an existing first mortgage held by Chase Manhattan Bank; 2. Escrow Account at Chase Manhattan Bank in the amount of $ 2,163.00 as of May 31, 1980; and 3. $ 30,000.00. On March 11, 1980, the executrix of Balsamo's estate "conveyed" the above to petitioner. The first mortgage held by Chase Manhattan Bank was in the principal amount of $ 17,979.61 as of April 2, 1980. The deed was recorded on April 23, 1980. Petitioner incurred legal fees of $ 33,780.00 in connection with the proceedings. Petitioner, soon after receiving the premises, entered into a formal contract of sale with Economopoulos and sold the premises on June 14, 1980. Pursuant to that contract, Economopoulos paid $ 65,000.00 cash and assumed the outstanding first mortgage in the principal amount of $ 17,000.00 for a gross sales price of $ 82,000.00. The fair market value of the premises on the date of Balsamo's death was $ 75,000.00. Petitioner was *477 a securities salesperson and a secretary by occupation, and, other than the premises in question, was involved in real estate only to the extent that she cared for and maintained the home of her elderly parents. During her period of ownership petitioner visited the premises once. Economopoulos did not contact petitioner to make any repairs. Petitioner's personal residence was located 60 miles away, in Brooklyn. Petitioner paid taxes of $ 1,112.24 and interest of $ 207.86 in connection with the premises during 1980. Petitioner received gross rental income of $ 716.67 from the rental of the premises during 1980, $ 500 for the month of May and $ 216.67 for the June rental period before the sale of Economopoulos. [3]
In reporting the sale of her premises on her 1980 income tax return, petitioner claimed a cost basis in the property of $ 102,169.64 computed as follows: Date of death value assigned premises
$ 75,000.00
Legal fees related to acquiring title
28,015.52
$ 103,015.52
Less: depreciation for 1980
845.88
Basis claimed by petitioner
$ 102,169.64
*478 Petitioner allocated the legal fees to the items received pursuant to the Surrogate Court proceedings and settlement in the following manner: a) Cash
$ 30,000.00
Less: Mortgage on Premises
17,678.00
$ 12,321
b) Escrow Funds
3,111
c) Premises
75,000
TOTAL
$ 90,432
TOTAL LEGAL FEES
$ 33,780
Legal fees allocated to Cash
=
(12,321 x 33,780) = $ 4,602
90,432
Escrow Funds
=
( 3,111 x 33,780) = $ 1,162
90,432
Premises
=
(75,000 x 33,780) = $ 28,015
90,432
Petitioner's depreciation deduction of $ 845.88 for tax year 1980 was calculated under the straight-line method of depreciation over 25 years. [4] Based on the foregoing and as a result of the 1980 sale of the premises for $ 82,000.00, petitioner reported an ordinary loss on her 1980 tax return of $ 20,169.64. ULTIMATE FINDINGS OF FACT Petitioner's cost basis in the land devised to her by Balsamo was $ 96,598.00, $ 75,000.00 under Section 1014 *479 and $ 21,598.00 in legal fees relating to the premises, and properly allocable thereto. Petitioner suffered a capital loss of $ 14,598 from the sale of investment property. Petitioner's allocation of the legal fees was not due to a negligent or intentional disregard of the rules and regulations under section 6653(a). OPINION 1. Petitioner's Basis on Sale of the Premises.
Where a taxpayer acquires property from a decedent's estate, the basis of the property is generally the fair market value at the date of the decedent's death. Sec. 1014(a)(1). Petitioner and respondent have stipulated that the fair market value of the premises at the time of Balsamo's death was $ 75,000.00. Petitioner and respondent differ in their determination of whether one who receives encumbered property from a decedent's estate may properly include the amount of the encumbrance plus the date of death value of the property in one's basis for tax purposes. Petitioner asserts on brief that she is entitled to increase her basis by the outstanding amount of the first mortgage subject to which she took *480 the premises. Respondent contends that petitioner may not increase her adjusted basis of the premises by the amount of the first mortgage, since that amount is already reflected in the agreed fair market value. This question has been awarded by the Supreme Court in Crane v. Commissioner,331 U.S. 1 (1947). The Court in Crane determined that the basis of property received from a decedent's estate was the value of the property undiminished by the mortgage. In Vaira V. Commissioner,52 T.C. 986, 996 (1969), revd. on other grounds, 444 F.2d 770 (3d Cir. 1971), we noted that this conclusion accorded with the legislative purpose underlying section 1014 and its predecessor - "a purpose to prevent the imposition of an income tax on that part of the inheritance which represented appreciation in value while the property was in the hands of the decedent but to expose to income tax any increment in value represented by post-death appreciation." Petitioner's position combining the date of death value plus the amount of the mortgage would insulate some of the post death appreciation from taxation. We therefore agree with respondent and *481 conclude that petitioner's basis as derived from Balsamo's estate was $ 75,000.00. We must next determine the portion of petitioner's legal fees allocable to the premises. In the present case, petitioner allocated the legal fees among the items received, i.e., the net cash and premises, and presented her position on brief as follows: The cash received by the petitioner consisted of $ 30,000.00 in addition to the funds in an escrow account at Chase Manhattan Bank in the amount of $ 3,110.85, and the petitioner was obligated to pay a debt of the decedent, Louis Balsamo, to Chase Manhattan Bank in the amount of $ 17,678.83 which debt was secured by a mortgage on the real property received by petitioner, for a net cash distribution of $ 15,432.02. Respondent asserts that petitioner failed to properly allocate the fees among the various items received. Specifically, he contends that the mortgage liability represented an encumbrance on the premises, is therefore related to the premises, and should reduce the net equity value of the premises, not the cash, for purposes of making the allocation. We agree with respondent. Respondent cites Spector v. Commissioner,71 T.C. 1017 (1979), *482 revd. on other grounds 641 F.2d 376 (5th Cir. 1981), as authority for the proper allocation of legal fees among assets received in a settlement. In Spector, the taxpayer incurred legal fees in connection with a divorce settlement and received stock, cash and real estate. We held that the legal fees should be "allocated pro rata among the properties and cash received, in accordance with their relative values." 71 T.C. at 1027. Petitioner contends that in determining "value" for allocation purposes, the Spector case was referring to value as defined by the Supreme Court in the case of Crane v. Commissioner, supra. In Crane, the Court rejected the definition of "value" and meaning "equity," and held that value for the purpose of determining basis of a property acquired from a decedent or a decedent's estate was the value of the property at the date of death, undiminished by the mortgage thereon. Therefore, petitioner argues, her discharge of the mortgage indebtedness did not result in any increase of basis in the premises but did result *483 in a decrease in the amount of cash she received. Crane, however, dealt with a different issue, basis of property. For the purposes of allocating legal fees to the assets received in a settlement, the proper measure is the net value of the various assets received. In this case, the "value" of petitioner's premises is her "equity" in the property. Petitioner received the premises subject to the mortgage, and Economopoulos assumed the mortgage under the contract of sale. The encumbrance related to the premises for all relevant periods. Accordingly, we find that the proper allocation of legal fees is as follows: [5]
Cash
$ 30,000.00
Escrow Funds
2,163.00
Premises
$ 75,000.00
Less: Mortgage on Premises
17,979.00
57,021.00
Total
$ 89,184.00
Total Legal Fees
$ 33,780.00
Legal fees allocated to Cash: (30,000/89,184 x 33,780) = $ 11,363 Legal fees allocated to Escrow Funds: (2,163/89,184 x 33,780) = $ 819 Legal *484 fees allocated to Premises: (57,021/89,184 x 33,780) = $ 21,598 Petitioner's basis in the premises is therefore $ 96,598.00; $ 75,000.00 under section 1014, plus legal fees of $ 21,598.00 relating to the premises, and properly allocated thereto. Petitioner sold the premises for $ 82,000.00, including the amount of the mortgage liability assumed by Economopoulos, Crane v. Commissioner, supra. Her loss is $ 14,598.00 ($ 96,958 - $ 82,000). 2. Character of Petitioner's Loss
On her 1980 tax return with respect to the premises, petitioner climbed an ordinary loss from the sale of real property used in a trade or business and held for more than one year. Section 1231(b)(1) provides, in part, that the term "property used in a trade or business" means real property used in a trade or business held for more than one year, other than four categories of property not applicable here. Both petitioner and respondent agree that she is deemed to have held the property for more than one year. [6]
*485 Petitioner contends that the premises were property used in a trade or business following the historical position of this Court that the rental of even a single piece of improved real property constitutes a trade or business. Curphey v. Commissioner,73 T.C. 766 (1980); Elek v. Commissioner,30 T.C. 731 (1958); Lagreide v. Commissioner,23 T.C. 508 (1954); Noble v. Commissioner,7 T.C. 960 (1946); Hazard v. Commissioner,7 T.C. 372 (1946). Respondent argues that the Second Circuit uses a facts and circumstances approach to determine this precise issue and that this Court in Curphey adopts a facts and circumstances test which changed our long-standing position. Neither petitioner nor respondent correctly states this Court's applicable legal standard. Our historical position that rental of one property constitutes a trade or business establishes a general not an absolute rule. See Fegan v. Commissioner,71 T.C. 791, 814 (1979), affd. without published opinion (10th Cir. 1981), *486 wherein we referred to "our longstanding definition of 'trade or business' as including under appropriate circumstances the rental of one property" (emphasis added). Our opinion in Curphey v. Commissioner, supra, relied upon by respondent did not turn a general rule into an open-ended facts and circumstances test in every situation. Our discussion of matter-of-law standards therein specifically referred to section 280A. See 73 T.C. at 774. We did no more than suggest that there may be more flexibility in applying the general rule in the context of that section. In any case, this Court's position is not controlling for purposes of our decision today. We must decide this issue pursuant to the law as articulated by the Second Circuit. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). The case of Grier v. United States,120 F. Supp. 395 (D. Conn. 1954), affd. per curiam 218 F.2d 603 (2d Cir. 1955), provides the basis for our conclusion. In Grier, the taxpayer rented a single family house received by inheritance to the same tenant for a period *487 of 14 years, prior to selling the property. The tenant was renting the premises even before the taxpayer inherited the property. The taxpayer provided, either by himself or through an agent, the necessary repairs and maintenance to upkeep the premises. The court determined that the rental property was not property used in the taxpayer's trade or business, citing his minimal activities with respect to the house as compared to he length of his ownership, the lack of activity to rent or re-rent, and the absence of employees hired to regularly maintain or repair the premises. The court found a lack of a "regular and continuous activity of management" under a facts and circumstances analysis. 120 F. Supp. at 398. Therefore, it was held that the loss from the sale of the premises was a capital loss. The facts of this case are likewise not favorable to a finding that petitioner used the premises in a trade or business. Petitioner owned the premises for a very short period. Based on the incomplete and disjointed record before us, it appears that petitioner's principal activity with respect to the premises was to negotiate and carry out its sale. Petitioner's activities *488 with respect to the premises as rental property were almost non existent. Petitioner testified that the lessee, Economopoulos, pointed out to her a dead rat, a bee's nest, and several leaks during her single visit, yet petitioner presented no evidence that she attempted to remedy these problems during her period of ownership. Petitioner testified that her brother-in-law performed various repairs on the premises on two separate occasions. However, Economopoulos, a credible and disinterested witness, had no recollection of such visits, nor could petitioner produce a paid receipt for his services. She also did not deduct these expenses. She took the premises subject to the lease and let the status quo continue during her period of ownership. The foregoing would indicate that petitioner did not perceive the property as rental property, but as investment property shortly to be sold to Economopoulos. As we view the facts of this case, revealed by the particular record before us, we conclude that petitioner's ownership of the premises in question did not constitute a trade or business and that she did no more than hold such premises for investment. The loss sustained by her is a capital *489 loss. 3. Negligence Addition Under Section 6653(a)
Section 6653(a) provides for an addition to tax if "any part of the underpayment * * * of any income * * * is due to negligence or intentional disregard of rules or regulations." Petitioner bears the burden of proving that respondent's addition to tax of $ 402.07 should not apply. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent's only argument is that petitioner presented no evidence and cited no authority which would explain the allocation of the legal fees between the net cash received and the premises. Petitioner contends that her allocation was not a negligent or intentional disregard of the rules or regulations, but a proper allocation based on her interpretation of the law. Respondent and petitioner agree, however, that the negligence addition should not be imposed where there is an honest difference between the parties with respect to a justifiable position. Based on the facts before us, we find that petitioner should not be liable for the addition to tax. Little authority exists *490 on which to base any solid legal position concerning the proper allocation of legal fees. Petitioner's position, while not upheld by this Court, is not so unjustifiable as to be subject to this addition to tax. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedures. ↩
2. Petitioner's income (loss) from the rental of the premises and her allowable deduction for medical and dental expenses will be computed under Rule 155.↩
3. It is unclear from the record whether petitioner received any rental income in March or April of 1980. ↩
4. It is unclear from the record why petitioner calculated her depreciation based on a three-month period of ownership but reported only one and a half months rental income. ↩
5. The amounts used for calculating the legal fees allocated to the premises are the amounts stipulated to by the parties. ↩
6. As the premises in question was clearly "subject to the allowance for depreciation" and "real property," we need not review these facts for purposes of section 1231↩.