WILLARD F. NEWMAN AND EDTH NEWMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Newman v. Commissioner
Docket No. 11147-86.
United States Tax Court
T.C. Memo 1989-63; 1989 Tax Ct. Memo LEXIS 63; 56 T.C.M. (CCH) 1232; T.C.M. (RIA) 89063; February 13, 1989. *63 P, primarily a grocer, spent between 30 and 50 percent of his time pursuing the trade or business of promoting, organizing and financing various enterprises over a 15-year period. P suffered losses when several enterprises he had financed, by advancing funds and guaranteeing loans, failed and his co-venturer and obligor went bankrupt. Held, such losses are deductible as business bad debt losses under I.R.C. section 166. Leslie Shields, for the petitioners. Rebecca A. Dance, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1982 in the amount of $ 25,961.05. Concessions having been made, the sole issue remaining for decision is whether certain losses resulting from the transfer of monies and the guarantee of loans are business or nonbusiness bad debts and losses within section 166. [1]
*65 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Willard F. Newman and Edth Newman, [2] resided in Madisonville, Tennessee, when they filed their petition herein. Petitioner, Willard F. Newman, is a self-employed grocer who has resided in Madisonville, Tennessee (pop. 2,800) since birth. Petitioner began working in the grocery business at the age of 15 when he went to work for his uncle's "grocery on wheels" -- which delivered groceries to homes in Madisonville. Petitioner remained in Madisonville to attend Hiawasse College, a two-year liberal arts school. Petitioner's primary vocation has been that of owning and operating a grocery business, Newman Groceries, Inc., which operated two stores, one in Madisonville and a second in nearby Sweetwater, Tennessee. In addition to his grocery business, petitioner consistently devoted between *66 30 and 50 percent of his time to various entrepreneurial activities in and around Madisonville. Since 1971, petitioner purchased and sold or developed over 20 ventures, including grocery stores, a convenience store, clothing stores and commercial real estate developments. Petitioner possessed a reputation in Madisonville of being a risk-taker who would finance and assist the start-up of small businesses. Some of petitioner's ventures proved profitable and some did not. The onset of a heart condition forced petitioner to curtail all of his business activities after 1986. The following table lists petitioner's various business ventures, the year of petitioner's entry therein, whether or not petitioner obtained a controlling interest, the length of time petitioner held his interest in the venture and whether petitioner sold his interest in the venture for a profit or loss: Date or Year
Percentage
Venture   of Entry
Control
Newman Groceries, Inc.
Unclear
100
Quick Clean Laundry
1956
50 T & C Corp., Inc.
6/1/71
50 Town and Country Motel
6/12/71
50 and Restaurant Quality Commercial
12/79
Unclear
Cleaners Loomis Venture
10/28/71
Initially 100,
(unimproved real property sold 50, then
in Sweetwater) sold remaining 50
Athens Residential
5/26/72
Unclear
Property (subdivided) Greater Eastern
1973
Unclear
Tennessee Development, Inc. (rental property venture) Hicks Farm (shopping
1977
Unclear
center never materialized) Yates Farm
6/9/77
100
NWT Partnership (built
2/1/78
33 1/3
office building) Alfred's IGA
2/16/78
Initially 100,
sold 50 --
then sold
remaining 50 --
Tellico Plains Property
2/22/78
Initially 100,
(shopping center sold 50, then
development) sold remaining 50
Newman-Hall Enterprises
6/18/81
50 The Clothing Gallery
4/81
50 Rasar's Landing
6/81
50 Joshua's
1981
50 National Factory Outlet
5/81
50 Southern Eatery, Inc.
4/82
33 1/3
Downtown Buffet
Unclear
Unclear
Wilson Venture
10/15/84
Unclear
Mason's Big M Corp.
8/9/85
50 Sav-A-Lot Food Store
1986
100
Gentry Loan
1986
100
Trantham Loan
1986
100
*67 Period
Sold for Profit
Venture   Held
or Loss
Newman Groceries, Inc.
28 yrs.
profit
Quick Clean Laundry
9 mos.
Profit
T & C Corp., Inc.
1 yr.
Profit
Town and Country Motel
1 yr.
Profit
and Restaurant Quality Commercial
18 mos.
Broke even
Cleaners Loomis Venture
10 yrs.
Unclear
(unimproved real property in Sweetwater) Athens Residential
Unclear
Profit
Property (subdivided) Greater Eastern
Current
--
Tennessee Development, Inc. (rental property venture) Hicks Farm (shopping
Unclear
Failed
center never materialized) Yates Farm
6 yrs.
Unclear
NWT Partnership (built
1 yr.
Profit
office building) Alfred's IGA
10 mos.
14 mos.
Profit
Tellico Plains Property
9 yrs
Profit
(shopping center development) Newman-Hall Enterprises
10 mos.
Loss
The Clothing Gallery
2 mos.
Loss
Rasar's Landing
6 mos.
Loss
Joshua's
less than 1 yr.
Loss
National Factory Outlet
less than 1 yr.
Loss
Southern Eatery, Inc.
1 yr.
Profit expected
buyer bankrupt
Downtown Buffet
6-8 mos.
Closed due to
petitioner's
heart condition
Wilson Venture
3 mos.
Unclear
Mason's Big M Corp.
5-6 mos.
Loss - buyer
bankrupt
Sav-A-Lot Food Store
Current
Negotiating
sale
Gentry Loan
Current
Unclear
Trantham Loan
Unclear
Loss-
Trantham bankrupt
*68 At issue in this case are petitioner's joint ventures with Josh Hall (Hall), listed above under the heading Newman-Hall Enterprises. Petitioner became acquainted with Hall in a Nashville, Tennessee, clothing store where petitioner frequently shopped. The then 27-year-old Hall worked in the store as a clothing salesman. It was in the store where Hall first approached petitioner about the possibility of opening a clothing store in Madisonville. Hall approached petitioner primarily for his financial backing and business acumen. Hall had never owned or managed a store previously. His only experience was as a sales clerk. In April, 1981, petitioner and Hall purchased The Clothing Gallery in Madisonville. The Clothing Gallery failed a few months later, in June, 1981. In an attempt to salvage the business, petitioner and Hall opened The National Factory Outlet which targeted the discount clothing market. The National Factory Outlet also failed within less than one year. Petitioner and Hall entered into another clothing store in Sweetwater, Tennessee, called Joshua's. Petitioner visited these stores daily and oversaw all bookkeeping activities. Petitioner financed all of the *69 ventures by contributing funds and obtaining loans from local lending institutions. Hall was jointly liable on the loans and agreed to repay petitioner for his share of the funds. In addition to lending money and acting as guarantor for the borrowed funds, petitioner was actively involved on a daily basis in managing the stores' financial books and in promoting the stores in and around Madisonville and Sweetwater. On June 18, 1981, petitioner and Hall formed Newman-Hall Enterprises which was a shell corporation used to house their various joint ventures. Each contributed $ 500 for 50 percent of the authorized Newman-Hall Enterprises capital stock. Petitioner and Hall leased property and a building on Tellico Lake in June, 1981, to house a convenience store called Rasar's Landing which became a part of Newman-Hall Enterprises, Inc. As was typical of petitioner's other ventures, petitioner was involved daily in organizing Rasar's Landing by meeting with suppliers, negotiating contracts, organizing the books and records, hiring employees, and obtaining third-party financing. Petitioner kept the books and records in his physical control and he supervised the business's bookkeeper, *70 Angie Ogle. Primary responsibility for managing the stores was left to Hall. Hall proved to be, in petitioner's words, a "slothful manager." As was also typical of petitioner's other ventures, petitioner executed a buyout agreement with Hall which provided that he would sell his interest in the clothing stores and Rasar's Landing to Hall once the businesses became established. Petitioner had another agreement with Hall whereby Hall would pay petitioner quarterly for his promotional assistance. Such payments proved sporadic at best. Rasar's Landing lost money and was closed on November 12, 1981. Within a year of formation, all of the activities constituting Newman-Hall Enterprises failed. Petitioner's business dealings with Hall ceased in April, 1982, when petitioner realized that not only were the stores losing money but that Hall was spending all of Newman-Hall Enterprises' assets at other locations in Knoxville. When petitioner confronted Hall and told him that he could not go to Knoxville and entertain all of his "buddies" at the University of Tennessee, at Cajun Wharfs in Madisonville and at the Steak and Ale in Madisonville, Hall shook his head and walked off. Hall *71 was unable to meet his financial obligations. Petitioner brought suit in Monroe County Chancery Court, Tennessee, for expenses and monies he had guaranteed and paid as a co-venturer. Hall filed for bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee on February 25, 1983. Petitioner was unable to collect any money from Hall. On or around March 28, 1983, petitioner filed a proof of claim with the United States Bankruptcy Court, No. 83-20708, In re F. Joshua Hall, III. On May 27, 1983, a discharge of debtor order was entered by the United States Bankruptcy Court in the aforementioned case. Petitioner incurred a loss in connection with the transfer of monies and the guarantee of loans for Newman-Hall Enterprises in the total amount of $ 58,106.11. OPINION Respondent contends that the $ 58,106.11 loss claimed by petitioner is a nonbusiness bad debt, deductible as a short-term capital loss under section 166(d)(1). Petitioner asserts the stipulated loss is a business bad debt warranting full deductibility as an ordinary loss under section 166(a)(1). Petitioner initially asserted in his brief that his loss is also deductible under section 165 *72 but appears to have subsequently abandoned that position. In resolving whether petitioner's debt should be classified as nonbusiness or business, we must determine whether petitioner incurred the bad debt loss in a trade or business or merely in a routine investment activity. To merit a deduction against ordinary income, petitioner must satisfy the statutory trade or business test, which requires factual examination of petitioner's activities. Commissioner v. Groetzinger,480 U.S. 23 (1987); Higgins v. Commissioner,312 U.S. 212 (1941); section 1.166-5(b), Income Tax Regs.
Section 166(a)(1) generally allows the full deductibility of worthless debts against ordinary income. Section 166(d)(1) provides an exception to the general rule of deductibility; losses from nonbusiness debts are deductible only as short-term capital losses. Section 166(d)(2) specifies that a nonbusiness debt is "a debt other than -- (A) a debt created or acquired *73 (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Petitioner alleges that he was in the trade or business of "seeking out business opportunities and dealing in business enterprises." Petitioner then concludes that his bad debt loss was incurred in connection with his trade or business of promoting businesses and as such should be deductible against ordinary income under section 166(d)(2). (Hereinafter, we will use the term "trade or business of promoting" synonymously with "trade or business of promoting, organizing and/or financing businesses.") Respondent counters that petitioner was "not in the separate trade or business of promoting, organizing, and/or financing businesses" and in the alternative, that even if petitioner is considered to be in the general trade or business of promoting, his specific involvement in Newman-Hall Enterprises was merely an investment and not connected to his general trade or business of "promoting." Under either approach respondent concludes that petitioner's loss was a nonbusiness bad debt loss which is deductible *74 only as a short-term capital loss under section 166(d)(1). We agree with petitioner. Respondent cites a comprehensive list of prior cases which have rejected taxpayers' assertions that they were in the trade or business of promoting: United States v. Generes,405 U.S. 93 (1972); Whipple v. Commissioner,373 U.S. 193 (1963); Higgins v. Commissioner, supra;United States v. Byck,325 F.2d 551 (5th Cir. 1963); Deely v. Commissioner,73 T.C. 1081 (1980); Millsap v. Commissioner,46 T.C. 751 (1966); Hudson v. Commissioner,31 T.C. 574 (1958); Ray v. Commissioner,T.C. Memo. 1981-578; and Ingram v. Commissioner,T.C. Memo. 1961-277. We refrain, however, from employing a presumptive rule denying classification as a trade or business based on the weight of factual determinations in past cases alone, and instead look to the weight of the evidence in the case at hand. See Farrar v. Commissioner,T.C. Memo. 1988-385. Petitioner *75 bears the burden of proving that he was in the trade or business of promoting. Rule 142(a). In Deely v. Commissioner, supra at 1092-1093, following dictum in Whipple v. Commissioner,373 U.S. 193 (1963), we held that the separate "trade or business of promoting, organizing, financing, and selling businesses" does exist for purposes of deducting bad debts under section 166. As reflected by the facts in the many decided cases in this area, the difficulty lies in differentiating between investment activity and the trade or business of promoting. Neither section 166 nor the pertinent regulation, section 1.166-9, Income Tax Regs., attempt to define what constitutes a trade or business for purposes of section 166. See Commissioner v. Groetzinger,480 U.S. 23, 36 (1987). It has also been of some concern, as the Supreme Court noted in Groetzinger, supra at 27, that "a broadly applicable authoritative judicial definition [has not] emerged." *76 The general approach which has evolved includes the following requirements to establish that taxpayers are in the trade or business of promoting, organizing, financing and selling businesses: (1) compensation sought is other than the normal investor's return, and income received is the direct product of the taxpayer's services and not indirectly produced from the successful operation of the corporate enterprise; (2) the activity is conducted for a fee or commission or with the immediate purpose of selling the corporation at a profit in the ordinary course of the taxpayer's business; and (3) the taxpayer had a reputation in the community for promoting, organizing, financing and selling businesses. Deely v. Commissioner, supra;Farrar v. Commissioner, supra.
We have no difficulty concluding that petitioner was in the trade or business of promoting. Petitioner's primary trade or business was Newman Groceries, Inc. However, petitioner spent between 30 and 50 percent of his time promoting, organizing and financing other businesses for sale at a profit. There is nothing which prohibits a taxpayer from pursuing more than one trade or business successfully. *77 See Commissioner v. Groetzinger, supra at 35; Curphey v. Commissioner,73 T.C. 766, 775-776 (1980). The record reveals that petitioner was able to manage both his grocery business and promotional business simultaneously with evident success. Between 1971 and 1986, petitioner was involved in over 20 ventures. Petitioner sold his interest in a majority of these ventures for a profit, all within 18 months of his involvement. Petitioner's credible testimony has convinced us that over a period of 15 years he actively pursued the trade or business of purchasing or developing businesses for quick sale at a profit. Petitioner's own testimony was buttressed at trial by Angie Ogle, petitioner's former bookkeeper. Several other credible witnesses also convinced us that petitioner's activities formed the basis for a well-established reputation in Madisonville as a promoter of businesses. Petitioner must not only establish that he was in the trade or business of promoting but that his losses were proximately related to such trade or business. United States v. Generes, supra at 96. Respondent argues that even if petitioner is found to *78 be in the general trade or business of promoting, his specific activities with regard to Newman-Hall Enterprises were not part of his general trade or business but were merely an independent investment. Respondent then concludes that petitioner's losses arising therefrom were not proximately related to any general trade or business of promoting and hence may only be deductible as nonbusiness or short-term capital losses. We do not agree. On the contrary, we find that petitioner's activities in Newman-Hall Enterprises, although ill-fated, were nevertheless an integral part of his trade or business of promoting. We also find the losses at issue herein were proximately related to such trade or business. The record establishes that petitioner was actively involved in the various Newman-Hall Enterprises from their inception. Petitioner visited the clothing stores and Rasar's Landing (convenience store) daily, supervised their books, secured financing and promoted the stores within Madisonville and Sweetwater. Importantly, petitioner initially provided for his receiving of commissions and the possibility of selling his interest to Hall once the activities became profitable. The record *79 has convinced us that petitioner intended to develop the various components which comprised Newman-Hall Enterprises, as he had done in similar ventures in the past, and sell them for a profit as part of his overall trade or business. The fact that Newman-Hall Enterprises failed and petitioner lost $ 58,106.11 does not, by itself, deprive petitioner's activity of the trade or business categorization. Petitioner's loss was proximately related to his trade or business of promoting. The loss arose from monies advanced to Newman-Hall Enterprises or loans guaranteed by petitioner. All such funds were expended with the express purpose of developing the ventures housed in Newman-Hall Enterprises so that petitioner could sell them at a profit. Petitioner's business expertise was limited to the grocery business and to developing enterprises for quick resale at a profit. We are convinced that petitioner never intended to invest in the clothing stores or Rasar's Landing for an extended period of time because he possessed no expertise in clothing sales. Petitioner's expertise was in developing and selling such ventures. Petitioner had established a pattern of selling these types of ventures *80 at a profit within a relatively short period of time. We have not seen any evidence which would persuade us that he intended to vary this pattern which proved successful in the past in the enterprises at issue herein. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect during the taxable year 1982. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners stipulated that Edth Newman "also goes by the name of 'Edith' Newman." Since "Edth" was the spelling used in the petition herein, we will use that spelling throughout our opinion.↩