**ROGERS et al. v. UNITED STATES.**

**Civil Action No. 1301.**

District Court, D. Connecticut.

Oct. 11, 1946.

George W. Crawford, of New Haven, Conn., for plaintiff.

Douglas W. McGregor, Asst. Atty. Gen., Andrew D. Sharpe and A. Barr Comstock, Sp. Assts. to the Atty. Gen., Adrian W. Maher, U. S. Atty., of Bridgeport, Conn., and Edward J. Lonergan, Asst. U. S. Atty., of Hartford, Conn., for defendant.

HINCKS, District Judge.

This is an action in which the plaintiffs seek to recover a $3,954.15 payment of deficiency income tax for the year 1940, with interest thereon.

### Findings of Fact.

1. The plaintiffs are duly appointed, qualified and acting trustees of the certain trusts created under the will of Constand A. Moeller, late of the City and County of New Haven, and State of Connecticut, in the Probate District of New Haven, deceased.

2. The plaintiffs, excepting Moses S. Rogers, were duly appointed as trustees of said trust on October 8, 1940. At all times hereinafter mentioned and prior to said October 8, 1940, the trustees of said trusts were the plaintiff Moses S. Rogers, and Herbert L. Moeller, Sr., now deceased.

2(a). Under the terms of said will the testamentary trustees were given power to sell, but not to buy, real estate; to invest all surplus income and all avails of property sold in mortgages on improved real estate constituting double security for the amount loaned; and from the income of the trust to pay certain specified annuities to testator's nine children and their issue until the death of the last survivor of his children, whereupon the principal of the trust estate was to be distributed to the testator's grandchildren, per capita. Of the nine children surviving at the testator's death in 1914, six are still surviving, their present ages ranging between sixty-four and seventy.

3. The plaintiffs were required to and did, before the 15th day of March, 1941, duly file a Fiduciary Income and Defense Tax Return for the year 1940, and pay a tax of $43,348.21.

4. The Commissioner of Internal Revenue, as a result of an examination and review, thereafter determined a deficiency in the tax due by the plaintiffs in the sum of $3,578.42, as evidenced by a letter from the Commissioner dated December 15, 1942.

5. On December 15, 1942, the plaintiffs paid the sum of $3,578.42, as said claimed deficiency, and also the sum of $375.73, as interest thereon.

6. During the tax year of 1940, the plaintiffs' predecessors in office sold three parcels of real estate belonging to said trust estate, at a net profit of $6,266.99, which net profit in their return for that year was claimed and treated as long term gains on the sale of capital assets. These three parcels were known as Numbers 48 Eaton Street, 66 Foote Street, 153 Dixwell Avenue, and all in the City of New Haven, Connecticut. Of these parcels No. 48 Eaton Street was acquired on February 9, 1935, by foreclosure of a mortgage thereon. The two remaining parcels had been owned by the testator and came into the hands of the plaintiffs as a part of the trust estate.

7. Said three parcels of real estate were sold to the Housing Authority of the City of New Haven as part of a site for a low income housing project, said sale being

made when condemnation proceedings for said purpose were imminent.

8. Said deficiency is based on the Commissioner's ruling in effect that the gains on the buildings in question were gains on depreciable assets used in a trade or business and therefore not capital gains. The following are the results of so treating said transactions by the Commissioner:

| | Net Proceeds | Adjusted Cost | Gain Or *Loss | Gain or *Loss to be Taken into Account |
|---|---|---|---|---|
| Land | $4,508.15 | $4,538.69 | *$ 30.54 | *$ 15.27 |
| Buildings | 9,707.03 | 3,409.50 | 6,297.53 | 6,297.53 |
| Net | | | $6,266.99 | $6,282.26 |

Net gain to be taken into account as reported on the tax return filed was 50% of $6,266.99 or $3,133.50.

9. In the tax year of 1940, the plaintiffs' predecessors in office foreclosed defaulted mortgages on two parcels of real estate in the City of New Haven, Connecticut, known as numbers 489 Central Avenue and 879 Elm Street, and acquired the title to same.

10. Upon acquiring the title to said two properties by strict foreclosure, under the laws of the State of Connecticut, the plaintiffs' said predecessors in office were compelled to pay taxes assessed thereon prior to the date of foreclosure as follows:

| | |
|---|---|
| 489 Central Avenue | $235.59 |
| 879 Elm Street | 250.16 |
| Total, | $485.75 |

11. The Commissioner disallowed said taxes so paid but failed to adjust the costs of the properties affected by these amounts. On the basis of the assessed values for the year 1940, the allocation of these expenses to the buildings on said properties would be:

| | |
|---|---|
| 489 Central Avenue | $ 96.61 |
| 879 Elm Street | 145.04 |
| Total, | $241.65 |

Depreciation on this amount at 3% is $7.25.

12. A claim for refund of said taxes and interest was duly filed and made on October 16, 1943. Said claim for refund was rejected by the Commissioner of Internal Revenue on November 21, 1944.

13. The testator at the time of his death was engaged in a beer business and also the business of manufacturing motor trucks. Both of these businesses were wound up by the executors of the will in the course of the settlement of the estate.

14. At the time of his death the testator owned various parcels of improved real estate which came into the hands of the plaintiffs as a part of the trust estate and thirty-two of said parcels were still held by them during the year 1940. Many of these parcels were operated by the testator in connection with his beer business. He also bought and sold other parcels not connected with his beer business and managed such parcels while he owned them.

15. In the year of 1940 the trustees also had twenty-nine parcels of improved real estate belonging to the trust estate, which were acquired by them as a result of the foreclosure of mortgages thereon. Many of these foreclosures took place during the recent depression period.

16. The trustees have managed the said properties which came to them from the testator from the beginning of the trust, and also those acquired by foreclosure from the date of the acquisition of the same.

17. The trustees have procured tenants for said properties and have collected the rent for the same. They furnished electricity for lighting hallways in houses occupied by two or more families, and for the operation of oil burners in houses where heat was supplied. A combination of gas, light, water and heat was furnished in only one apartment house. The trustees

have also made necessary repairs on said properties, from time to time, after their personal inspection of same.

18. The trustees have maintained an office from the beginning of the trust in one of the buildings owned by the estate at 99 Temple Street, New Haven, Connecticut, and from said office have administered the trust, including the management of the three properties with which the instant case is concerned, and also the other properties hereinbefore mentioned.

19. In said office of the estate the trustees in the discharge of their fiduciary duties have employed continuously a secretary and bookkeeper, and some of the time have employed additional clerical help.

20. At various times the trustees have sold properties belonging to the trust estate, some of which were sold at a profit and some at a loss.

21. The trustees, from the beginning of the trust, have annually filed in the Probate Court for the District of New Haven, Connecticut, and for review and approval of said court, an account of their doings as trustees of said estate. The original trustees of this trust qualified November 24, 1915.

22. The book value of the trust estate in 1940 consisted of a large block of stock in the Narragansett Brewing Company of Providence, R. I., worth $250,000, $225,000 of bonds, and $792,000 of mortgages on improved real estate holdings, in addition to the sixty-one parcels of property owned by the estate valued at $650,000.

### Conclusions of Law.

1. Before and during the year 1940, plaintiff trustees of the trust created under the will of Constand A. Moeller were engaged in the business of managing the real estate in the trust res.

2. Under Sec. 117(a) (1) of the Revenue Act of 1938, Title 26 U.S.C.A. Int.Rev. Code, § 117(a) (1), such property must be deemed excluded from the statutory definition of capital assets. Any profits realized from the sale of buildings upon such property was correctly treated by the Commissioner of Internal Revenue as ordinary income.

3. However, as the government now concedes, the plaintiffs should recover $7.25, with interest, due to necessary adjustment of depreciation allowance of two parcels of real estate, obtained by foreclosure, on which plaintiffs were obliged to pay prior taxes.

### Opinion.

Plaintiffs are trustees of a trust created in 1915 under the terms of the will of Constand A. Moeller of New Haven, Connecticut and manage a trust estate which includes sixty-one parcels of improved real estate in the city of New Haven. Although not permitted under the terms of the trust to purchase new properties, they have acquired twenty-nine through foreclosure and they continue to hold thirty-two of the thirty-nine parcels included in the original trust estate. All of these parcels are rented for use either as homes or business sites.

During 1940, under threat of imminent condemnation proceedings, the trustees sold three of the improved parcels to the Housing Authority of the City of New Haven for a lowcost housing project. A taxable gain resulted, of which over $6,000 was properly allocated to the buildings. The land itself, not being subject to depreciation, the trustees treated as a capital asset, and properly so as the Commissioner concedes. The profit from the sale of the three buildings the trustees also treated as long-term gain derived from the sale of capital assets, taxable at 50% of value under Sec. 117 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 117(a) (1). But the Commissioner of Internal Revenue assessed a deficiency tax on the theory that the buildings constituted "property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 23(l)" and as such was expressly excluded from the category of capital assets as defined by Sec. 117 of the Revenue Act of 1938, which reads as follows:

"Sec. 117. Capital gains and losses

"(a) Definitions. As used in this title—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer

(whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*)."

There is no dispute that the buildings sold were "property" of the trustees or that it was property "of a character which is subject to the allowance for depreciation, etc." The only open question is whether within the meaning of the Act the buildings had been "used in the trade or business" of the taxpayer-trustees.

■ The fact that the activities in question have been carried on by the taxpayers as testamentary trustees is not a relevant factor. For present purposes, the law makes no distinction between activities carried on by those acting in a fiduciary or representative capacity and those carried on by the actual proprietors in their private capacity. Deputy v. Du Pont, 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416; Dorr v. United States, D.C., 18 F.Supp. 92.

Notwithstanding, it must be held, I think, that the activities in question constituted a "business" within the meaning of the act —not the business of buying and selling, but rather the business of holding and managing the real estate including the parcels which were sold. To keep the properties rented and to collect the rents, to keep the properties insured, serviced and repaired, to incur and discharge the resulting expenses, and to keep accounts of the receipts and expenses required activity which was continuous, systematic, and, at least in view of the number of properties managed, substantially extensive. The objective was gained with a minimum of hazard. Thus the aggregate of activities had all the essentials of a business. Nor were the activities undertaken as a temporary task incidental to liquidation. On the contrary, in point of time they had substantial duration—a duration as extensive as that of many activities commonly viewed as pertaining to a "business."

■ It is true that it now seems well established that the care and management of an estate *comprised of securities* either by an individual owner or by a trustee does not constitute a "business" at least for purposes of that section of the Revenue Act which sanctions the deduction from gross income of "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." Internal Revenue Code, Sec. 23(a) (1), 26 U.S.C.A. Int.Rev.Code, § 23(a) (1). See White's Will v. Commissioner, 3 Cir., 119 F.2d 619; City Bank-Farmers Trust Co. v. Commissioner, 2 Cir., 112 F.2d 457; Higgins v. Commissioner, 2 Cir., 111 F.2d 795. But the cases seem to distinguish such activity from that involved in the management of tangible property such as real estate which necessarily involves the direct control of the physical property which produces the income. Fackler v. Commissioner, 6 Cir., 133 F.2d 509; A. L. Carter Co. v. Commissioner, 5 Cir., 143 F.2d 296; Snell v. Commissioner, 5 Cir., 97 F.2d 891; Richards v. Commissioner, 9 Cir., 81 F.2d 369; Commissioner v. Boeing, 9 Cir., 106 F.2d 305; Miller v. Commissioner, 9 Cir., 102 F.2d 476. Even though the management of securities, as much as the management of real estate for commercial purposes, may seem to be a "business," the distinction is too firmly grounded in the tax law to be disregarded.

The cases upon which the plaintiffs principally rely are not in point. In Kane v. Commissioner, 2 Cir., 100 F.2d 382, in Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, and in Felt's Estate v. Commissioner, 44 B.T.A. 593, the management of real estate was not involved.

It follows that the action of the Commissioner must be sustained except for one little item of $7.25 for which the plaintiff on the pleadings is concededly entitled to judgment.

The Clerk will enter judgment in that amount with interest from December 15, 1942.